**Quinn Emanuel Urquhart & Sullivan, LLP**
Jonathan C. Bunge, SBN 6202603
Allison Huebert, SBN 6309281
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
jonathanbunge@quinnemanuel.com

**Quinn Emanuel Urquhart & Sullivan, LLP**
Michael B. Carlinsky
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
michaelcarlinsky@quinnemanuel.com

*Attorneys for Plaintiffs Aon Corporation and Aon plc*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Aon Corporation and Aon plc,<br><br>               Plaintiffs,<br><br>       -vs-<br><br>Michael J. Burwell and Willis Towers Watson plc,<br><br>               Defendants. | Case No: 17-cv-6915<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiffs Aon Corporation and Aon plc (collectively, "Aon" or "Plaintiffs") hereby file this action in connection with the activities of Aon's former consultant, Michael J. Burwell.

## NATURE OF THE ACTION

1.      Aon hired international consulting firm PricewaterhouseCoopers Advisory Services LLC ("PwC") to provide Aon with strategic consulting services related to Aon's restructuring of its business units and various cost-savings initiatives.

2.      Because of the highly-confidential trade secrets Aon would need to provide PwC in the course of this engagement, Aon required PwC to sign a non-disclosure agreement and to take other actions to prevent its employees from disclosing Aon confidential information.

3.      Likewise, Aon required that PwC agree to prevent its consultants and partners from working for Aon's major competitor, Willis Towers Watson plc ("Willis"), for two years.

4.      Defendant and former PwC partner Michael Burwell was a key member of the Aon project team. Burwell was instrumental in convincing Aon to retain PwC to do this work and Burwell was intimately involved in the implementation and execution of the project.

5.      In the course of his work, Burwell directed strategy on the Aon engagement and received confidential information and trade secrets from Aon.

6.      While working for Aon, Burwell—without Aon's knowledge—began negotiating with Aon's competitor Willis to take a position as Willis' Chief Financial Officer.

7.      Willis directly competes with Aon's insurance brokerage and professional services businesses.

8.      Willis solicited Burwell for employment knowing of Burwell's work on the Aon project and Burwell's exposure to Aon's trade secrets and confidential information.

9.      While negotiating his new position with Aon's direct competitor, Burwell continued to work on the Aon projects; continued to receive Aon confidential information; and continued to attend confidential strategy meetings with Aon's most senior executives.

10. Burwell will use Aon's trade secrets to Aon's competitive disadvantage if Burwell begins work at Willis.

11. Aon seeks injunctive relief and damages as a result of Burwell's and Willis' wrongful acts.

## THE PARTIES

12. Plaintiff Aon Corporation is a Delaware corporation with its principal address at 200 E. Randolph Street, Chicago, Illinois 60601.

13. Plaintiff Aon plc is a global professional services firm registered and headquartered in London, United Kingdom.

14. Aon provides—among other things—risk management, insurance brokerage and advisory services. Aon is one of the largest insurance brokers in the world based on revenue.

15. Defendant Willis Towers Watson plc is a global professional services firm incorporated in Ireland and headquartered in London, United Kingdom. Willis provides risk management, insurance brokerage and advisory services. Willis is one of the largest insurance brokers in the world based on revenue and directly competes with Aon. Willis maintains a corporate office at Willis Tower, 233 South Wacker Drive, Chicago, Illinois 60606 and regularly conducts business in Chicago, Illinois.

16. Defendant Michael J. Burwell is an individual, a Certified Public Accountant, and a former partner for PricewaterhouseCoopers Advisory Services LLC ("PwC"), a global consulting firm. Burwell recently resigned from PwC to take the position of Chief Financial Officer for Willis Towers Watson plc. Burwell is a citizen of the state of Michigan residing at 2951 Chestnut Run Drive in Bloomfield Hills, Michigan 48302. During his time at PwC and in the course of his work for Aon, Burwell worked from Aon's corporate offices at 200 East Randolph Street, Chicago, Illinois 60601.

3

**JURISDICTION AND VENUE**

17. This Court has jurisdiction over this case under 28 U.S.C. § 1332 because this is an action between citizens of different states where the matter in controversy exceeds the amount of $75,000, exclusive of interest and costs.

18. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to Plaintiffs' claims occurred in this judicial district.

19. Burwell's unlawful acts were committed within, and have caused tortious injury, in Illinois.

20. Willis' unlawful acts were committed within, and have caused tortious injury, in Illinois.

**FACTUAL BACKGROUND**

21. In 2016, Aon engaged PwC to provide strategic consulting services related to Aon's restructuring of its business units and various cost-savings initiatives.

22. In order to provide these services, Aon provided PwC with its highly-sensitive, confidential business plans and other materials, including Aon's trade secrets.

23. Aon provided PwC with information including Aon's programs, methods, techniques and processes that are independently valuable to Aon because they are not known or readily ascertainable to other entities that can obtain economic value from their disclosure and use.

24. Aon developed this confidential information through substantial effort and at significant cost.

25. Because of the time, effort, and resources that Aon has devoted to the creation of its confidential and proprietary trade secret information, such information has independent economic value to Aon's competitors and its disclosure would cause Aon to lose a valuable commercial advantage over its competitors.

26. Aon takes active steps and uses reasonable means to safeguard its confidential and proprietary trade secret information.

27. For example, in order to ensure the confidentiality of such highly sensitive and commercially valuable information, Aon—among other things—required PwC to agree to restrict access to Aon's material to specific personnel at PwC.

28. Aon also marks confidential information as "confidential" and otherwise restricts its dissemination internally and externally.

29. Aon also required that PwC include special confidentiality provisions in its engagement agreements with Aon.

30. For example, to ensure that the confidentiality of Aon's information was maintained, Aon insisted that PwC bar any PwC employee or partner who worked on the Aon engagement from working on any engagement involving a short list of specific named competitors of Aon for two years following the conclusion of that person's work for Aon. Specifically, PwC agreed to prevent its consultants and partners from performing any services for Willis:

> "Each party, as a recipient, recognizes the confidential and proprietary nature of the disclosing party's Confidential Information and acknowledges that in the event of a breach of this Agreement, the disclosing party may suffer irreparable harm. Accordingly, the disclosing party shall be entitled to seek injunctive relief in the event of a breach or threatened breach of this Agreement, as well as all other applicable remedies at law or in equity. PwC will not assign any PwC partner, principal or employee performing Services hereunder to perform services for a Competitor of Company on a subject matter arising out of or relating to the subject matter of this engagement for two (2) years following the conclusion of such individual's performance thereon. For purposes of the immediately preceding sentence, a "Competitor" of the Company shall mean Marsh & McLennan Cos. Inc., Willis Towers Watson Plc, Arthur J. Gallagher & Co., Jardine Lloyd Thompson Group Plc, BB&T Insurance Holdings Inc., Brown & Brown Inc., Mercer, LLC, Marsh, LLC and Oliver Wyman Group or affiliates of the foregoing who share a common name."

31. Aon took these steps to protect its confidential information and trade secrets from its competitors, because—among other reasons—these materials would be valuable to its competitors.

32. Former PwC partner Michael Burwell worked extensively on the Aon engagement; he was one of the senior partners involved in the project from the very beginning.

33. Burwell marketed the PwC engagement to Aon.

34. PwC highlighted Burwell's ability to provide important strategic advice to Aon as a critical reason as to why Aon should hire PwC.

35. This engagement was marketed, negotiated and performed at Aon's corporate offices at 200 East Randolph Street, Chicago, Illinois 60601.

36. Once Aon hired PwC, Burwell was one of the partners in charge of the Aon engagement.

37. In the course of his work, Burwell was exposed to Aon confidential information and trade secrets, including Aon's programs, methods, techniques and processes.

38. This information included, but was not limited to the following:

    A. Aon's restructuring plans;

    B. Aon's operating models;

    C. Aon's confidential business plans for the next several years;

    D. Aon's key organizational strategy;

    E. Aon's financial data and performance for Aon's various business units;

    F. Aon's identified areas for improvement and focus;

    G. Aon's growth and expansion plans;

    H. Aon's acquisition plans and the types of businesses Aon planned to acquire;

    I.   Aon's real estate strategy;

    J.   The offices that Aon planned to expand or contract;

    K.   Aon's outsourcing strategy;

    L.   Aon's savings initiatives; and

    M.   Aon's marketing and communications strategy.

39. Burwell participated in numerous key strategy meetings where Aon senior executives together with Burwell and others from PwC devised these strategies and discussed this material in detail.

40. Burwell also interviewed numerous Aon senior executives regarding sensitive and confidential business plans, Aon's growth opportunities and challenges, and other confidential business information.

41. Burwell also was involved in restructuring Aon's business units which necessitated—among other things—planning for an entire restructuring of the administrative function of the company and the company's real estate portfolio.

42. Burwell attended and was provided materials from meetings involving senior executives of the company in which the meeting participants discussed in detail confidential information regarding the company's plans, goals and progress.

43. Burwell met with Aon senior executives on a daily basis during the course of the project and was aware of Aon's business plans going forward for the next three years.

44. Burwell also is highly knowledgeable about the specific work performed by PwC for Aon, which could be used by a competitor to replicate the organizational changes and savings initiatives that Aon invested substantial time and money to develop.

45. Burwell's work on the Aon engagement took place primarily at Aon's offices at 200 East Randolph Street, Chicago, Illinois 60601.

46. Burwell was subject to obligations as a result of his agreements with PwC and his role on the Aon project, including confidentiality obligations.

47. Burwell also is a licensed Certified Public Accountant, and various ethical rules govern his conduct with respect to confidential client information and conflicts of interest.

48. These ethical rules include prohibitions against taking engagements that pose a conflict of interest with a prior client.

49. These ethical rules also include a responsibility to disclose potential conflicts of interest.

50. And these ethical rules include prohibitions against using confidential information acquired as a result of a prior employment relationship to advance personal interests or advance the interests of a current or prospective employer.

51. Because of the nature of the services that Burwell performed for Aon, Burwell also owes Aon a fiduciary duty, which includes a duty to refrain from unfair competition, including the misuse of confidential information and trade secrets.

52. Further, the nature of the information Aon provided to Burwell is such that Burwell would necessarily and inevitably disclose that information if allowed to take an executive level position with Aon's direct competitor.

53. Burwell continued working on the Aon project through August 2017, when Aon learned that Burwell intended to begin working for Willis, as Chief Financial Officer, effective October 1, 2017.

54. Burwell continued to work on the Aon project, continued to receive Aon confidential information, and continued to attend confidential meetings all while in discussions with Aon's direct competitor regarding Burwell taking a senior executive position in which he would oversee for Willis the same types of projects he was working on for Aon.

55. Burwell failed to inform Aon of his intentions to work for Aon's direct competitor or the conflict this posed. Instead, Burwell continued to work for Aon and receive highly confidential information from Aon while negotiating his new position at Willis.

56. Willis is a direct competitor to Aon's insurance brokerage and professional services businesses and is listed as one of four competitors in Aon's public securities filings.[1]

57. Willis' public filings state that Willis competes with Aon plc, and specifically states that "Marsh & McLennan Companies and Aon plc are the two other major providers of global risk management services. Competition for business is intense in all of our business lines and in every insurance market, and in some business lines Marsh & McLennan Companies and Aon plc have greater market share than we do."[2]

58. Further, in 2016, Willis merged with professional services company Towers Watson.

59. In a press release regarding the merger, Willis representatives said that the merger occurred in order to "compete directly with Marsh, Mercer and Aon Hewitt" in the professional

---

[1] Aon plc, Annual Report (Form 10-K) (Dec. 31, 2016), *available at* http://d18rn0p25nwr6d.cloudfront.net/CIK-0000315293/cc16c7d8-e762-42d2-a8bd-b1d8d7322ede.pdf

[2] Willis Towers Watson, Annual Report (Form 10-K) (Dec. 31, 2016), *available at* http://investors.willistowerswatson.com/phoenix.zhtml?c=254268&p=irol-SECText&TEXT=aHR0cDovL2FwaS50ZW5rd2l6YXJkLmNvbS9maWxpbmcueG1sP2lwYWdllPTExNDM3MTQ5JkRTRVE9MCZTRVE9MCZTUURFU0M9U0VDVEElPTl9FTlRJRJUkUmc3Vic2lkPTU3

services arena and that "there will be changes to the business structure" in order to take advantage of the new opportunities allowed for by the merger.[3]

60. Burwell's experience leading Aon's restructuring and other high-level projects made him an attractive candidate to Willis because of Burwell's knowledge of Aon's confidential business plans and strategy.

61. For example, when commenting on Burwell's hire, Willis Towers Watson's Chief Executive Officer John Haley noted that Willis was "excited to have Mike join our leadership team **at an important point in our company's evolution**. Mike understands managing, leading and driving results in a complex, global company with a strong focus on clients. I am confident that his expertise in finance, transactions and transformation is **well suited to guide our long-term growth and remaining integration efforts** – allowing us to achieve our full potential as Willis Towers Watson."[4]

62. As Chief Financial Officer for Willis, Burwell will be responsible for setting Willis corporate strategy, controlling cost and managing spend among business units, directing other financial initiatives and having input on key strategic initiatives, including how best to compete with Willis' direct competitor Aon.

63. Burwell's exposure to Aon's trade secrets will directly inform Burwell's decision-making in these areas.

---

[3] Jordan Lynn, *Willis towers Watson merger allows direct competition with Marsh, Aon*, Insurance Business Australia, Feb. 15, 2016, *available at* http://www.insurancebusinessmag.com/au/news/breaking-news/willis-towers-watson-merger-allows-direct-competition-with-marsh-aon-57219.aspx
[4] Steve Evans, *Willis Towers Watson hires CFO replacement Burwell from* PwC, Reinsurance News, Aug. 21, 2017, *available at* https://www.reinsurancene.ws/willis-towers-watson-hires-cfo-replacement-burwell-pwc/ (emphasis added.)

64. Burwell inevitably will use and disclose Aon's confidential and proprietary trade secret information to benefit Willis.

65. Given the nature and breadth of his knowledge, the use and disclosure of Aon's confidential and proprietary trade secret information by Burwell to benefit Willis is inevitable.

66. Aon brings this lawsuit in order to protect its trade secrets and confidential information from dissemination to Aon's direct competitor.

67. Defendants' wrongful conduct will harm Aon substantially.

## COUNT I

**Violation of the Illinois Trade Secrets Act (against Michael Burwell and Willis)**

68. Aon incorporates all allegations set forth in paragraphs 1-67 above.

69. The Illinois Trade Secrets Act ("ITSA") defines a "trade secret" as "information including, but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d).

70. A person misappropriates a trade secret by, among other things, disclosing the trade secret despite knowing that it was "acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use" or when it was acquired from a person who had a duty to maintain its secrecy or use. 765 ILCS 1065/2(b)(2)(B)(II) and (III).

71. The ITSA authorizes injunctive and other relief to remedy "actual or threatened misappropriation" of trade secrets. 765 ILCS 1065/3(a). Illinois law permits injunctive relief upon showing that a person's new employment will inevitably lead him or her to rely on the trade secrets.

72. Aon owns confidential and proprietary trade secret information that provides Aon with a commercial advantage because it is not generally known in the industry in which Aon does business, nor is it readily ascertainable by proper means.

73. Aon's confidential and proprietary trade secret information includes, without limitation, the information described in this complaint. Aon developed this confidential and proprietary trade secret information through substantial cost and effort over a period of many years.

74. Aon has taken reasonable steps to protect its confidential and proprietary trade secret information by—among other things—limiting access to such information, marking such information confidential, entering into agreements with those who have access to such information requiring that they maintain its confidentiality, and requiring the use of secure networks and passwords.

75. Burwell acquired Aon's confidential and proprietary trade secrets information as a result of his engagement with Aon and he has a duty to maintain its secrecy.

76. Burwell has acquired and used Aon's trade secrets through improper means in violation of the Illinois Trade Secrets Act.

77. The nature of the information that Aon provided to Burwell is such that Burwell would necessarily and inevitably disclose such information if Burwell takes a position as Chief Financial Officer of Aon's direct competitor.

78. To the detriment of Aon, Burwell used improper means to misappropriate Aon's confidential and proprietary trade secret information to benefit improperly himself and Willis, in violation of his duty to maintain the secrecy of that information.

79. If Burwell is allowed to begin working for Willis, Willis will acquire and use Aon's trade secrets through improper means in violation of the Illinois Trade Secrets Act.

80. Burwell's new position with Willis requires Burwell to compete directly with Aon in the precise areas as to which Burwell advised Aon and received Aon trade secrets and confidential information.

81. Burwell's new employment with Willis will inevitably lead him to rely on Aon's trade secrets.

82. Defendants' actions were willful and malicious.

83. As a result of Burwell's and Willis' wrongful conduct, Aon has been damaged and will continue to be damaged in an amount to be determined at trial.

84. If this Court does not enjoin Burwell from working for Willis, Burwell will continue to use Aon's trade secrets to Aon's detriment and Aon will be irreparably harmed.

85. Aon has no adequate remedy at law to protect against Defendants' misappropriation and use of Aon's trade secrets and confidential information.

86. Aon has suffered and will continue to suffer immediate and irreparable injury if Burwell is allowed to work for Willis.

## COUNT II

### Breach of Fiduciary Duty (against Michael Burwell)

87. Aon incorporates all allegations set forth in paragraphs 1-86 above.

88. Because of the nature of the services Burwell performed for Aon, Burwell occupied a position of trust in relation to Aon.

89. Aon provided Burwell, a Certified Public Accountant, with Aon's confidential financial information and trusted Burwell to act in Aon's interest during the course of his work for Aon.

90. Burwell owes Aon a fiduciary duty, which includes a duty of loyalty and honesty and a duty to refrain from conduct that would cause Aon to sustain injury or loss.

91. This includes a duty to refrain from engaging in unfair competition with Aon, including (but not limited to) the misuse of Aon's confidential information and trade secrets.

92. During the course of his fiduciary relationship with Aon, Burwell breached his duty to Aon by acquiring personal interests adverse to those of Aon, concealing his relationship with Aon's competitor, and dealing independently of the interests of Aon to further his personal gain.

93. Burwell will breach his fiduciary duty to Aon by commencing employment with Aon's direct competitor and by retaining and disclosing Aon's confidential information.

94. Burwell's wrongful conduct was willful and malicious.

95. As a result of Burwell's wrongful conduct, Aon has been damaged and will continue to be damaged in an amount to be determined at trial.

96. Aon has suffered and will continue to suffer immediate and irreparable injury if Burwell is allowed to work for Willis.

## COUNT III

### Unfair Competition (against Willis)

97. Aon incorporates all allegations set forth in paragraphs 1-96 above.

98. Aon and Willis directly compete against each other in the professional services and insurance brokerage markets.

99. Aon has invested significant time and expense in developing its trade secrets and confidential business information.

100. Willis engaged in unfair competition by attempting to hire Burwell in order to wrongfully acquire Aon's trade secrets and confidential business information.

101. If Burwell is allowed to work at Willis, Willis will have an unfair advantage and will be able to compete unfairly in the insurance brokerage and professional services industries.

102. Willis has engaged in and will continue to engage in unfair competition in violation of the laws of Illinois.

103. Willis' wrongful conduct was willful and malicious.

104. As a result of Willis' wrongful conduct, Aon has been damaged and will continue to be damaged in an amount to be determined at trial.

105. Aon has suffered and will continue to suffer immediate and irreparable injury if Burwell is allowed to work for Willis.

## COUNT IV

### Inducement of Breach of Fiduciary Duty (against Willis)

106. Aon incorporates all allegations set forth in paragraphs 1-105 above.

107. Willis induced, enticed, procured and solicited Burwell to breach his fiduciary duty owed to Aon, by—among other things—encouraging Burwell to accept a position with Willis while he was working for Aon.

108. Willis' wrongful conduct was willful and malicious.

109. Because of Willis' wrongful conduct, Aon has been damaged and will continue to be damaged in an amount to be determined at trial.

110. Aon has suffered and will continue to suffer immediate and irreparable injury if Burwell is allowed to work for Willis.

## PRAYER FOR RELIEF

WHEREFORE, Aon respectfully requests the following relief against Burwell and Willis:

A. That this Court enjoin further breaches or attempted breaches of Burwell's fiduciary duty to Aon by prohibiting Burwell from competing with Aon by acting in any capacity for Willis for a period of two years running from the date of entry of judgment;

B. That this Court enjoin Burwell from utilizing or distributing Aon confidential and proprietary trade secret information;

C. That this Court order Burwell to identify and return any and all confidential and proprietary trade secret information that he took from Aon or that he possesses;

D. That this Court enjoin Willis from utilizing or distributing Aon confidential and proprietary trade secret information;

E. That this Court order Willis to identify and return any and all confidential and proprietary trade secret information taken from Aon or that it possesses;

F. That judgment in excess of $75,000.00 be entered for Aon for compensatory and related damages, statutory damages, and punitive or exemplary damages;

G. That Aon be awarded its cost of suit and attorneys' fees; and

H. For award of such other and further relief, in law and equity, as this Court deems just and proper.

### JURY DEMAND

Aon demands a trial by jury on all issues so triable.

DATED: Chicago, Illinois
September 25, 2017

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Jonathan C. Bunge*

Jonathan C. Bunge, SBN 6202603
Allison Huebert, SBN 6309281
191 North Wacker Dr., Suite 2700
Chicago, IL 60606
(312) 705-7400
jonathanbunge@quinnemanuel.com

Michael B. Carlinsky
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
michaelcarlinsky@quinnemanuel.com

*Attorneys for Plaintiffs Aon Corporation and Aon plc*